## PAGE v. JONES et al.

### (No. 2391.   May 26, 1920.)

#### SYLLABUS BY THE COURT.

1.   If intermixed property is of the same kind, quality, and value, and if no advantage will result to either party by getting the identical property owned by him, even if that were possible, replevin will lie for the number of quantity owned by the plaintiff, to be taken out of the mass, where the proof shows the quantity or portion to which each party is entitled, and the intermingling was not brought about by the wrongful or fraudulent act of the party seeking relief.          P. 198

2.   Where a confusion of goods is occasioned by the negligence of one, but the goods confused are of equal and uniform value; that is, when the mixture is approximately homogeneous, the party responsible for the confusion does not forfeit his interest in the goods, where there has been no fraud or intentional wrongdoing, and the evidence clearly shows the portion contributed by each of the parties.          P. 199

3.   Sections 41 and 42, Code 1915, which authorize the recording of partido contracts, are permissive and not mandatory, and a failure to record such a contract does not render the same void as to subsequent purchasers or mortgagees without notice.          P. 201

Appeal from District Court, Quay County; Leib Judge.

Action of replevin by Jennie P. Page against H. B. Jones and another, in which defendants gave a forthcoming bond and retained possession. Judgment for plaintiff for the property or for an alternative money judgment, and defendants appeal. Reversed and remanded, with directions.

E. R. WRIGHT and J. J. KENNEY, both of Santa Fe, for appellant.

The general rule is undisputed that Replevin lies only for specific property, capable of identification or separation, so as to be fixed in kind and cannot be maintained

for an individed interest or share, except in cases of fraud or wrongful confusion of property. 34 Cyc. 1359; 23R, C. L. ''Replevin'' p. 262; Gray a. Parker, 38 Mo. 160; Ames v. Miss. Boom Co., 8 Minn. 417.

We recognize that there is an exception made by some of the authorities where the property sought to be replevied consists of a part of the larger mass of the same nature and quality, which can be easily divided into aliquot parts. 34 Cyc. 1359; 23 R. C. L., ''Replevin,'' 862-863.

If, however, the mixture occurs through the fault of plaintiff, he is not entitled to maintain replevin for his share of the property, but only for such part thereof as he can identify as his own. 34 Cyc. 1360-1361; McDonald v. Bailey, 37 L. R. A. (N. S.) Okla., 267.

Case note to above.

''Confusion of property is the inseparable intermixture of property belonging to different owners,'' (12 C. J. 490). It arises when goods ''of two persons are so intermixed that the several portions can be no longer distinguished,'' (2 Blackstone 405). Its rules have been explicitly applied to the intermingling of animals bearing the same brand, belonging to different owners. Ayre v. Hixson, 53 Ore. 19; 98 Pac. 515; Ann. Cas. 1913 E 659; Johnson v. Hocker, 39 S. W. 406; Clay Robinson & Co. v. Larson, 125 Minn. 271, 146 N. W. 1095.

For essentials of the doctrine see 5 R. 6 L. 1049; 12 C. J. 490; U. S. v. Hentz 93 W. S. 575; Cloffin v. Jersey Works 11 S. E. 721; International Lumber Co. v. Bradley Timber & Railroad Supply Co., 156 N. W. at p. 275. Spofford v. True, 54 Am. Dec. 621; Wells v. Batts, 34 A. S. R. 507.

ED. F. SAXON, of Tucumcari, and H. A. KIKER of Raton, for appellee.

Replevin was proper action. 34 Cyc. 1355; Martinez v. Martinez. 2 N. M. 464. Crocker v. Mann, 26 Am. Dec. 684; Bruen v. Ogden, 20 Am. Dec. 593 (N. J.) ; Marshall v. Davis, 19 Am. Dec. 463 (N. Y.)

As to confusion of goods: Hall v. Page 48 Am. Dec. 235; Ayre v. Hixson et al., 98 Pac. 515; Tulsifir v. Page, 54 Am. Dec. 591 (note.); Willard v. Rice, 45 Am. Dec. 226; State v. Farmers State Bank of Bridges, 172 Pac. 130; Peoples Nat. Bank v. Mulholland et al., 117 N. E. 46; Rust Land & Timber Co. v. Ison, 91 Am. St. Rep. 68.

### OPINION OF THE COURT.

ROBERTS, J.   Appellee sued appellant in replevin, seeking to recover possession of 740 head of sheep of varying ages.   The writ was issued, and appellants gave a forthcoming bond and retained possession of the sheep. An answer was filed, and the cause put at issue, and was tried to a jury.   Judgment was rendered for the appellee for possession of 550 ewes, 60 lambs, and 50 head of old ewes, and judgment for $5,000 in the alternative. From this judgment appellants appeal.

The facts out of which the controversy arose may be briefly stated as follows:   During the lifetime of P. R. Page, the husband of appellee, he had with one Santiago Giddings for many years a number of sheep on "partido" contract.   He died some time prior to October, 1915, at which time his widow, appellee here, made the partido contract upon which her right to the possession of the sheep in question here is dependent.   Under this contract she let to Santiago Giddings 600 head of ewes of different grades, the contract stipulating that he should use upon such sheep a designated earmark, which should also be placed on the increase.   Giddings testified in the court below as a witness for appellee substantially to the following effect:   That the earmark which he was required to use on the Page sheep by the terms of the contract was his own individual earmark; had been used by him for 30 years, and that such mark had never been recorded; that the earmark originally was the earmark of Jose A. Baca; that he had for a long number of years also had on partido contract some 900 head of sheep belonging to the said Baca, and that he had also had about 550 head of sheep belonging to the daughters

of William B. Giddings, his brother, which he was running on partido; that all of these sheep, including the "Page sheep," had for many years been run in the same earmark. Giddings bought the Baca sheep and the sheep belonging to his nieces some two or three years prior to the institution of this suit. He continued to run them all in the same earmark, and borrowed the money from the appellants to pay for the sheep so purchased, giving them back as security a chattel mortgage on the sheep. Two very dry years resulted in a great loss of sheep, so that Giddings had less than 1,000 sheep left shortly prior to the institution of this suit. Appellants took possession of the whole flock of sheep under their mortgage, and appellee brought this action to recover possession of the sheep which Giddings had from her on partido. The effect of the judgment was to give Mrs. Page all the sheep which she was entitled to under the partido contract, with possibly a slight exception, putting the entire loss upon appellants or Giddings.

(1) Consideration of three questions will dispose of this case. Appellants argue first that replevin was not the proper remedy. In the case of Gonzales v. Ilfeld, 25 N. M. 608, 185 Pac. 1110, sheep let under a partido contract and intermingled with other sheep all marked with the same brand were replevied. There it was shown that all the sheep were of the same kind or quality, and that it was impossible to distinguish the sheep let under the different partido contracts. The point as to whether replevin was the proper remedy was not discussed by the court, although argued in the briefs. But this court must have considered that it was the appropriate remedy, otherwise it would have held that it was not.

In 23 R. C. L. p. 862, the rule is stated as follows:

"The general rule is that if property intermixed is of the same kind, quality and value, and if no advantage will result to either party by getting the identical property owned by him, even if that were possible, replevin will lie for the number or quantity owned by the plaintiff, to be taken out of the mass, when the mingling was not brought about by his act."

The rule deduced from the authorities we believe may be stated as follows: Where the common mass consist of fungible goods—that is, where each article is exactly like the other, such as oil in a tank, or grain in a bin, and the plaintiff is able to specify the number of articles in such mass belonging to him—an exception is made to the general rule, and the plaintiff is permitted to maintain replevin. See, also, 34 Cyc. 1359; Fines v. Bolin, 36 Neb. 621, 54 N. W. 990, and case note to the case of McDonald v. Bailey, 37 L. R. A. (N. S.) 267.

Here so far as appears the sheep put into the common mass were all of the same grade, quality and kind, consequently appellee was entitled to maintain replevin for such aliquot part of such mass as she was able to show rightly belonged to her.

This then brings us to a consideration of the question as to what part of the sheep she was entitled. The judgment of the lower court gave her practically all of the sheep which she had originally put in the common mass, or rather which had been put into the common mass by Giddings. The most that could be claimed as to the act of Giddings in mixing the sheep belonging to Mrs. Page with the other sheep which he had on partido and afterwards purchased would be that it was negligently done. There is nothing in the evidence upon which to base any other claim. No fraudulent purpose or improper motive was shown or claimed.

(2)    The rule is that where one fraudulently, willfully, or wrongfully intermingles his goods with those of another, so that there is no evidence to distinguishh the goods of the one from those of the other, the party responsible for the confusion forfeits all his interest in the mixture to the other party, and in the case of agents, bailees, executors, administrators, and other trustees, occupying positions of trust and confidence, the rule as to the confusion applies when the mixing is merely negligent or careless. But these harsh rules are not generally applied where the confused goods, though indistinguishable, are of equal and uniform value; that is when the

mixture is approximately homogeneous. In such a case as this, the remedy is division in kind, or compensation for actual loss. Take, for example, the case of an administrator. Suppose he has in his hands 100 bushels of wheat belonging to the estate and 100 bushels of his own. The wheat being the same quality, it is dumped into the same bin. There is no doubt as to the exact amount contributed. It would be absurd to say that the administrator should lose the hundred bushels which he put in because of his negligence. Of course, if the wheat was of different grade, a different rule would be applied, for the mixture would not be all of the same quality. For an exhaustive discussion of the subject, see the case of Claflin & Co. v. Con. Jersey Works, 85 Ga. 27. 11 S. E. 721. See, also, note to the case of Ayre v. Hixson, Ann. Cas. 1913E, 671. In the case of Hesseltine v. Stockwell, 30 Me. 237, 50 Am. Dec. 267, the court said:

"The common law in opposition to the civil law assigns the whole property, without liability to account for any part of it, to the innocent party, when there has been a confusion of goods, except in certain cases, or conditions of property. Chancellor Kent correctly observes that the rule is carried no further than necessity requires.     2 Kent's Com. 365.

"There is therefore no forfeiture of the goods of one who voluntarily and without fraud makes such an admixture. As when, for example, he supposes all the goods to be his own, or when he does it by mistake.

"And there is no forfeiture in case of a fraudulent intermixture when the goods intermixed are of equal value. This has not been sufficiently noticed, and yet it is a just rule, and is fully sustained by authority. Lord Eldon, in the case of Lupton v. White, 15 Ves. 442, states the law of the old decided cases to be, "if one man mixes his corn or flour with that of another and they were of equal value, the latter must have the given quantity; but if articles of a different value are mixed, producing a third value, the aggregate of the whole, and through the fault of the person mixing them, the other party cannot tell what was the original value of his property; he must have the whole. This doctrine is stated with approbation by Kent. 2 Kent's Com. 365."

In this case so far as appears from the evidence the sheep in question prior to the intermixing of the herd were all of the same kind, character, and quality, so that when confused, the mixture was approximately

homogeneous. The parties know definitely the number of sheep contributed by each to the common mass, and the loss to the common herd in justice and equity should be shared by the parties in proportion to their interest in the commingled goods. The rule announced in the case of Gonzales v. Ilfeld, supra, practically disposes of this case. We there said:

"We agree with the trial court in its finding that it was through the fault and negligence of the appellant that the sheep in question were so marked and commingled as to render their identification impossible. His acts led to the confusion of the goods, but it is urged upon us that appellant's acts, although negligent, were in no sense fraudulent or wrongful, and that he should not be made to forfeit his property when the elements of willful fraudulent, and wrongful commingling of the property are absent. We think this position well taken. * * *

"We therefore hold that the court should have permitted appellant to recover his proportionate share of the sheep marked with appellee's earmark, as there was no willful wrong nor fraud imputed to the appellant shown by the evidence nor found by the court in its findings."

If it be true, as testified to by Giddings, that the earmark in which he was required by the contract to carry the Page sheep belonged to him, there might not even be the element of negligence in the case. We think, however, that under the undisputed facts in the case the appellee was only entitled to her proportionate part of the confused property.

(3) Appellants further contend that sections 41 and 42, Code 1915, which authorize the recording of partido contracts, when the same have been reduced to writing, make the appellee's partido contract void as against the subsequent mortgage of the appellants, because such original partido contract was in writing and was not recorded.

Section 41 provides that—

"Copies of all contracts (partido) . . . may be filed with the county clerk . . . and when . . . . so filed, they shall be notice to everyone."

Section 42 provides:

"And when a copy of such contract shall be filed . . . .
it shall be notice to everyone that the person or persons in
charge of such animals . . . had no right to sell or dis-
pose of the same in any manner."

In the absence of statute, the registration or recorda-
tion of a contract of bailment is not necessary to its
validity, either as between the bailer and the bailee, or
as against third parties; but for the prevention of fraud
statutes have been enacted in many states by which such
registration or recordation is necessary to render the
contract valid as against creditors or subsequent pur-
chasers for value, and subsequent mortgagees without
notice. 6 C. J. 1106.

The practice of recording transfers, which would in-
clude contracts was unknown to the common law. 24
A. & E. Enc. of Law (2d Ed.) p. 115, and 23 R. C. L.
p. 170.

It follows therefore that since the whole matter rests
on a statutory basis the failure to record an instrument
which is not required to be recorded by the terms or in-
tendment of any statute has no effect on the rights of
parties as they exist at common law, independently of
the recording act. 24 A. & E. Ency. of Law (2d Ed.)
p. 115, and 23 R. C. L. p. 234.

It will be noted from a reading of the two sections of
the statute that the recording of a contract is permissive
merely, and not mandatory. It will also be noted that
the statute wholly fails to declare the effect of failure to
record.

"The object of the recording act being to protect certain
specific classes of persons against fraud, failure to record will
not, in the absence of an express provision to that effect,
render the instrument wholly void and inoperative to convey
the legal title; an unrecorded instrument is valid against every
one except the classes of persons included within the terms
of the statute." A. & E. Ency. of Law (2d Ed.) vol. 24,
p. 116.

JANUARY TERM, 1920          203

Cit. Natl. Bank v. Bean, 26 N. M. 203

Applying these principles to the two sections of the statute here involved, the conclusion is inevitable that recording is permissive and not mandatory; that failure to record has no effect, either upon the rights of the parties to the contract, nor does it render the contract void as against subsequent purchasers or mortgagees without notice.

The case will be reversed and remanded to the district court, with instructions to apportion the property between the parties as their interests appear, and to enter judgment accordingly, and it is so ordered.

PARKER, C. J. and RAYNOLDS, J., concur.