[Civil No. 3382.  Filed March 5, 1934.]

[30 Pac. (2d) 501.]

EVARISTO MARTINEZ, MARION O. HAWS and ROUND VALLEY BANK, a Corporation, Appellants, v. FRANK A. GARCIA, THE FIRST NATIONAL BANK OF HOLBROOK, a Corporation, and TOM REID, Appellees.

Mr. W. E. Ferguson, for Appellants.

Mr. Sidney Sapp, Mr. C. H. Jordan and Mr. Guy Axline, for Appellees.

ROSS, C. J.—This dispute involves the ownership or right of possession of certain cattle. On July 29, 1924, the plaintiff Martinez turned over to defendant Garcia, under contract, some range cattle on shares. On November 30, 1929, there were due, according to the complaint, from Garcia to Martinez under said contract 59 head of cows, 46 of which were branded ⊟M on left ribs and the remaining 13 $\mathbb{F}_5$ on left ribs. On the last-named date the said 59 head of cows and 20 head of calves were given over to or leased to Garcia by Martinez under a written five-year contract, under the terms of which the former agreed to pay all expense of caring for and protecting cattle (taxes excepted) and at the end of the contract to deliver or return to Martinez double the number of cattle, including cows and calves; or if contract be terminated sooner a number bearing the same ratio as the length of the shorter time bears to the five-year period; and, if unable to return of said brands

the full number agreed, Garcia agreed to make up the deficiency out of his individual brand, and failing to do so to pay Martinez their equivalent in cash at the market price at the time of the termination of the contract. It was a condition of the contract that it could be terminated by mutual understanding at any time, or that if Garcia failed or defaulted in complying with its terms or conditions, Martinez could repossess the cattle to which he was entitled at the time of the default. All the increase was to be branded ⊟ M F₅ on left ribs, said brands being the recorded brands of Martinez. This contract was on December 3, 1929, placed of record in the recorder's office of Apache county.

Garcia's individual recorded brand was A–F and the cattle in this brand occupied the same range as those in the Martinez brands.

On October 10, 1931, plaintiff Martinez, alleging a breach of the contract by Garcia in branding some of the increase in his individual brand during 1929, 1930 and 1931, and prior thereto, and in selling to Tom Reid at Holbrook, Navajo county, on November 24, 1930, 30 head of the Martinez cattle, replevied from Garcia all of the cattle bearing the Martinez brands, to wit, 33 head of cows and 28 head of calves, or a total of 61 head.

Thereafter, claiming that there was a deficiency of 53 head of cattle, Martinez filed his third amended complaint in which he made Reid a party defendant, having first obtained permission from the court, because he had purchased from Garcia 30 head of cattle bearing the Martinez brands. He also made the First National Bank of Holbrook a party defendant because it claimed some interest in the Martinez and Garcia brands as mortgagee. In this third amended complaint there were added as plaintiffs the Round Valley Bank and Marion O. Haws, the former because it had a mortgage on the Martinez brands given

to it by the plaintiff Martinez, and the latter because he had bought some of the Martinez cattle.

The plaintiffs' prayer is that any claim or right of Tom Reid or the First National Bank of Holbrook or Garcia to the cattle branded in the Martinez brands or Garcia brand be declared inferior to plaintiffs' claim or demand, and that it be decreed that plaintiff Martinez is entitled to a sufficient number of cattle branded in either the Martinez brands or the Garcia brand to make up any deficiency in the number of cattle he should have under the contract, and, if such deficiency cannot be made up in cattle, that said plaintiff have a money judgment against Garcia for the shortage and against Reid in the sum of $750, together with $10 per head for any increase.

Reid in his answer makes the point that the complaint on its face shows a misjoinder of causes of action and of parties.

The answer of the First National Bank consists of a general denial of most of the allegations of the complaint, an admission that the plaintiff Round Valley Bank on April 6, 1930, took a mortgage from plaintiff Martinez on the Martinez brands of cattle, and a denial that said mortgage is superior to its mortgage. The answer further shows that on December 24, 1928, it took a chattel mortgage from defendant Garcia on 100 head of cattle, consisting of 80 cows and calves, 3 yearling bulls, 4 grown bulls, and 13 dry cows, aged 1 year and up, said cattle being branded on right side A–F and on left side ⊟M as security to Garcia's note for $3,000 of even date, bearing interest at 10 per cent. per annum; that thereafter, on November 29, 1930, it took a chattel mortgage on the same livestock from Garcia for $2,500 to secure the latter's note in that sum; and that said notes had not been paid.

The case was tried to the court without a jury. Findings of fact and conclusions of law were made

and may be summarized as follows: (1) That defendant Garcia had breached his contract; (2) that Martinez was entitled to a deficiency of 53 head of cattle or their value at $22.50 per head, or $1,192.50, as against Garcia; (3) that the chattel mortgage of the Round Valley Bank on the Martinez cattle was superior to the chattel mortgage of the First National Bank on said brands; (4) that the First National Bank's chattel mortgage on the Garcia brand was superior to any claim of Martinez to said cattle except the increase of 1931 from the Martinez brands; and (5) that the First National Bank was entitled to a judgment of $710 against Martinez, the Round Valley Bank and Haws for A–F cattle taken by them or for their return. Judgment was entered in accordance with such findings and conclusions.

Reid was dismissed as an improper party defendant.

The plaintiffs appeal on four several grounds, which we will consider in their order.

First, it is said the court erred in dismissing Reid. The cause of action stated in the complaint against Reid is a distinct and separate cause of action from that stated against Garcia and the First National Bank. No one is interested in said cause of action except plaintiff Martinez and Reid. If Reid bought of Garcia some of the Martinez cattle, it was not proper, much less necessary, in suing for their value to make others, in no way interested in the issue, parties. The only relief asked against Reid is a money judgment for the value of the cattle. The settlement of that controversy is not necessary or essential or proper to a complete determination of the differences between the other parties to the suit. The relief asked, if obtained, could in no possible way affect the rights of the other defendants. Separate causes of action capable of the same relief and between the same parties may be prosecuted together, but sep-

arate causes of action not between the same parties, although concerning the same property, may not be joined in the same action.

Before considering the other assignments, we should state that the contract between Martinez and Garcia was one of bailment. Garcia did not take title to the cattle but held them as bailee. It is a form of contract that is frequently used among Mexican people and is referred to by them as "partido." The relation of the parties to such a contract is that of bailor and bailee. *Page* v. *Jones,* 26 N. M. 195, 190 Pac. 541, 10 A. L. R. 761; *Encino State Bank* v. *Tenorio,* 28 N. M. 65, 206 Pac. 698. A similar contract was construed in *Haws* v. *Fracarol,* (C. C. A.) 27 Fed. (2d) 74, 75, an Arizona case, as creating the relation of bailor and bailee, and therein it was said:

"It will be observed that the contract contains no words of grant or sale, and no language indicating a transfer of title, of either the sheep or their increase. Nor does the language of the contract indicate that the parties intended that the contract should constitute a present sale of the property or of any interest therein. Contracts such as this are not uncommon in the live stock sections of the country, and they have been uniformly construed as bailments, and not as sales."

Garcia, the bailee, could not dispose of or encumber by mortgage or otherwise the Martinez cattle, and, it appearing that he had breached his contract, Martinez was entitled to recover from him the number of cattle provided in the contract to be returned and, if there was a deficiency, a money judgment for their value. The right to make up the deficiency out of Garcia's individual brand or brands is given by the contract and, as between Martinez and Garcia, could no doubt be enforced. Under this authority Martinez and Haws did seize a number of the A–F cattle and turn them over to the Round Valley Bank to be ap-

plied on a mortgage owing it by Martinez, and the bank in turn sold them to one Mark Davis. At the time this was done the First National Bank had a chattel mortgage on the Λ–F brand, given to it by Garcia to secure the payment of his note for an amount far in excess of the value of the cattle.

The court, on the theory that the Round Valley Bank and Haws had converted said cattle as against the First National Bank, entered judgment against the plaintiffs for the value of the cattle so converted, or for their return.

The plaintiffs in their second assignment contend that the Round Valley Bank did not take the cattle from Garcia or the First National Bank and it was not liable for their value. We are not cited to any evidence to support this statement of fact.

It is also contended that the partido contract created an equitable lien on Garcia's Λ–F brand for any deficiency and that such lien was superior to the First National Bank's mortgage. The provision in the contract upon which this contention is based reads:

"That the said party of the second part agrees to return the full number of cattle agreed upon in this contract to the party of the first part at the termination of said contract, and if said party of the second part has not sufficient cattle to return to said party of the first part in the brands above given, then in that event said second party is to make up the deficiency out of his own individual brand and turn to said first party, and under all or any circumstances said party of the second part is to return to said first party the full number of cattle above agreed upon or their equivalent in cash to be based on the market price of cattle in effect at the termination of this contract."

The intention by Garcia to give a lien on his individual brand of cattle for any shortage or deficiency cannot be extracted from the language used. He

agreed to make up any deficiency in kind, animal for animal, and not being able to do so to pay cash therefor.

The court found that the indebtedness from Garcia to the First National Bank, evidenced by note and mortgage dated December 24, 1928, had not been paid or satisfied but had been renewed from time to time, and that the note and mortgage on the same property dated November 29, 1930, was a renewal of the original note and mortgage, less a payment of $500. Assignments three and four assert that this finding is not supported by the evidence. It is not contended that Garcia does not owe the bank the sum secured by the last mortgage, but that the first mortgage debt had been satisfied and the last was to cover a new loan; and, since such loan was made after the partido contract was filed with the county recorder, the bank took its mortgage with notice of the "equitable lien" reserved therein in favor of Martinez for any deficiency of the cattle. What effect, if any, the recordation of the partido contract would have as notice we do not decide. But, granting for the present that it became notice, it describes no particular cattle, by brand or otherwise, out of which Martinez might take cattle to make up any deficiency. It is quite clear that Martinez had no right to the A-F cattle as against the First National Bank, mortgagee, whether the last mortgage was to secure a renewal of the original obligation or for a new debt.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.