**SEYMOUR v. WILDGEN.**

No. 2713.

Circuit Court of Appeals, Tenth Circuit.

July 15, 1943.

Rehearing Denied Sept. 7, 1943.

C. E. Chalfant, of Hutchinson, Kan. (Walter F. Jones, Harold R. Branine, and J. Richards Hunter, all of Hutchinson, Kan., on the brief), for appellant.

W. H. Vernon, of Larned, Kan. (Dale Kidwell, of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This appeal presents the question whether a claim in a bankruptcy proceeding should have been allowed as a preferred claim or only as a common claim. E. P. Seymour owned certain land in Kansas, Milton E. Johnson was the tenant thereon from year to year and raised wheat, and the wheat was divided equally between them. Johnson was indebted to the First National Bank of Larned, Kansas, on five promissory notes aggregating more than $12,500 which he was presently unable to pay, and he needed cash for use in connection with the harvesting of his wheat crop. Seymour, Johnson and his wife, and the bank entered into a written agreement which provided that the bank should advance to Johnson $500 in order to enable him to harvest his wheat crop; that Seymour and Johnson and his wife should deliver to the bank all of the share of the wheat crop for 1931 belonging to Johnson; that on completion of such delivery, the bank should surrender the five notes and release the chattel mortgages securing them; that the then remaining balance of the indebtedness should be fully discharged on payment of $4,250, with interest thereon; that on or before November 15, 1933, and annually thereafter, Seymour and Johnson and his wife should deliver to the bank, at Sanford, Kansas, one-fifth of all wheat produced on the land, until the wheat delivered should at market produce $4,250 and the accrued interest; that during all of such time Johnson should farm to wheat not less than 1,000 acres of the land; and that since Seymour was obligating himself for the performance of the contract, Johnson and his wife should give him as security or indemnity a chattel mortgage on their farm machinery, equipment, livestock, and crops. The parties entered into a supplement agreement but its provisions are not important here, and since the two agreements constitute a single contract they will be referred to as one. The one-half of the wheat crop for 1931 belonging to Johnson was delivered to the bank. From 1933 to 1940, inclusive, one-fifth of the wheat grown each year was likewise delivered, and in that manner the balance on the Johnson indebtedness was reduced to $1,031.04, plus interest. In May, 1941, Johnson was adjudicated a bankrupt; a trustee was appointed; and the wheat crop for that year was subsequently harvested. The trustee delivered one-fifth of such wheat, amounting to more than 2,600 bushels, to a grain company at Larned; and with the consent of the bank it was subsequently sold and the proceeds impounded. The bank filed in the bankruptcy proceeding a claim as a secured creditor; the referee disallowed it as a secured claim, but allowed it as a common claim; on review, the court confirmed the order of the referee; and Seymour, interested as a guarantor or surety, appealed.

Section 70, sub. c, of the Bankruptcy Act, as amended by the Chandler Act approved June 22, 1938, 52 Stat. 840, 881, 11 U.S.C.A. § 110, sub. c, provides that as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court the trustee shall be deemed to be vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists; and that as to all other property the trustee shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a judgment creditor then holding a duly returned unsatisfied execution, whether or not such a creditor actually exists. But the statute does not undertake to determine what property belonged to the bankrupt as of the date of bankruptcy; what liens, if any, existed thereon; the validity of such liens; the order of priority among creditors having liens; or other cognate questions. Questions of that nature are determined by reference to the law of the state. Thompson v. Fairbanks, 196 U.S. 516, 25 S.Ct. 306, 49 L.Ed. 577; Knapp v. Milwaukee Trust Co., 216 U.S. 545, 30 S.Ct. 412, 54 L.Ed. 610; Commercial Credit Co. v. Davidson, 5 Cir., 112 F.2d 54; In re J. Rosen & Sons, 3 Cir., 130 F.2d 81; City of New Orleans v. Harrell, 5 Cir., 134 F.2d 399.

This contract was not filed of record. Section 58-301, General Statutes of Kansas 1935, provides in effect that an unrecorded chattel mortgage or other conveyance intended to operate as a mortgage on personal property, not accompanied by immediate delivery and followed by actual and continued change of possession, shall be void as against creditors of the mortgagor without notice and purchasers and mortgagees in good faith. Plainly this contract is not a chattel mortgage, but if it is a conveyance intended to operate as a

mortgage it comes within the statute and is void as to the trustee for failure to record it. Whether it is such a conveyance depends upon the intention of the parties; and that intention is to be ascertained from the language contained in the instrument, the circumstances surrounding its execution, and the interpretation which the parties placed upon it. The contract does not provide that the wheat is or shall be conveyed to the bank. It fails to contain any words of grant, sale, or conveyance, present or future. It does not speak in any manner either of a conveyance, transfer, or lien. It does not contain any of the covenants or provisions usual in chattel mortgages or other conveyances intended to operate as chattel mortgages. Instead, it provides that certain wheat shall be delivered to the bank. And when that has been done all rights of the bank shall end. Ordinarily a chattel mortgage or other conveyance intended to operate as a mortgage to a commercial bank constitutes collateral security for a promissory note or other primary obligation. That was not true here. After delivery to the bank of one-half of the wheat for 1931, all of the notes given by Johnson and his wife were to be cancelled and returned along with the chattel mortgages securing them. It was contemplated from the outset that thereafter the bank should not have any notes or other primary obligations of that kind. It was to have only the contract. Furthermore, under the law of the state existing at the time of the execution of the contract, a chattel mortgage given on crops not then sown or in existence was ineffective. Danville State Bank v. May, 126 Kan. 714, 271 P. 302; Schmidt v. Plummer, 140 Kan. 436, 37 P.2d 1. It is reasonable to assume that the bank was familiar with the law existing at the time striking down chattel mortgages on unplanted and nonexistent crops, and it therefore is not to be readily concluded that it was the intention of the bank in the face of that settled rule of law to enter into a contract designed to operate as a mortgage on wheat not sown or in existence at the time.

By the contract the parties effected an arrangement under which one was to furnish the land, another was to put in some cash and cancel and surrender certain notes and mortgages securing them and scale down the balance to a specified amount, and a third was to do the work; and the wheat grown was to be divided among them, each to own outright and separately his or its share. Such an arrangement constitutes in law a joint adventure. Livingston v. Lewis, 109 Kan. 298, 198 P. 952; Croft State Bank v. Girardey, 117 Kan. 585, 232 P. 1076.

The parties were not to share in revenues other than by a division of the wheat, and there was no provision with respect to sharing losses. One of the tests in determining whether a partnership or joint adventure exists is the sharing of profits and losses, but that test is not conclusive. Shoemake v. Davis, 146 Kan. 909, 73 P.2d 1043. And the contract fails to indicate that there was joint control. Instead, it negates the suggestion of any control on the part of the bank. But joint control is not an essential element of a joint adventure. It is merely a circumstance to be taken into consideration along with other surrounding facts and circumstances in determining whether the relationship exists. Davidson v. Shaffer, 153 Kan. 661, 113 P.2d 90.

Neither section 58-301, supra, nor any other statute in Kansas to which our attention has been directed, provides that an unrecorded contract or written instrument creating a joint adventure shall be void as between the original parties, as against subsequent creditors holding an attachment or judgment lien, or as against subsequent purchasers and mortgagees in good faith. And in the absence of such a statute, the failure to record this contract does not affect in any manner the rights of the parties to this proceeding—to the one-fifth share of wheat in the first instance, and now to the proceeds arising from its sale. Cf. Page v. Jones, 26 N.M. 195, 190 P. 541, 10 A.L.R. 761; Encino State Bank v. Tenorio, 27 N.M. 65, 206 P. 698; Clay, Robinson & Co. v. Atencio, 74 Colo. 17, 218 P. 906.

The order is reversed and the cause remanded with direction to allow the claim as a preferred claim.