Roy **PEMBERTON**, Appellant,

v.

James A. **DAVIS**, Appellee.

No. 22320.

United States Court of Appeals
Ninth Circuit.

Oct. 24, 1968.

Kenneth H. Bates (argued) of Dead-rich, Bates & Lund, Bakersfield, Cal., for appellant.

Richard W. Horton (argued) of Stewart & Horton, Wm. L. Harper, Reno, Nev., for appellee.

Before DUNIWAY and ELY, Circuit Judges, and SMITH, District Judge.*

RUSSELL E. SMITH, District Judge.

This appeal from an order in bankruptcy involves lien claims for the repair and storage of an aircraft and arises out of these facts:

On August 9, 1963, Midwest Livestock Commission Company (Midwest) delivered its aircraft to Pemberton for repairs. They were completed on or about September 9th. The value of the repairs was $272.04. On September 19, 1963, a California sheriff attached the aircraft at the instance of one Harris and orally instructed Pemberton to hold the aircraft in storage. The aircraft was in storage on October 22, 1963, when a petition in involuntary bankruptcy was filed against Midwest. On April 24, 1964 a trustee was appointed. On January 21, 1965 the sheriff released the attachment and on the same day the trustee procured an order from the district court directing all persons having claims to the aircraft to show cause why the aircraft should not be sold free of all liens and claims, and why any liens and claims established should not attach to the proceeds of the sale. On March 15, 1965 the district court directed the aircraft to be sold and ordered

that the proceeds of the sale be subject to any lien which Pemberton might establish. The aircraft was sold April 19, 1965 and Pemberton delivered possession of the aircraft to the purchaser at the sale. Except as indicated, no officer of the bankruptcy court made any effort to take charge of the aircraft.

The validity of Pemberton's lien for repairs arising under California law is not in question. Pemberton claims a lien for storage for 577 days at $3.50 per day. The referee, relying on California law, decided that there was a storage lien, but limited it to $250.00. The district court, relying upon California law, held that there was no storage lien in any amount.

We hold that California law governed the storage lien rights up to the time that the bankruptcy petition was filed (Seymour v. Wildgen, 137 F.2d 160 (10 Cir. 1943)), and we agree with the district court that no storage lien was created under California law. We hold that federal law was controlling after the filing of the petition in bankruptcy and that Pemberton was entitled to the sum of $305.00 and no more as an expense of the bankruptcy administration. Our reasons are:

■ There was no storage lien securing the charges for the 10-day period between the completion of the repairs and the attachment by the sheriff. It is not claimed that during this period the storage was at the express or implied request of the owner and if Pemberton held the aircraft to protect his liens for repairs, then under the provisions of California Civil Code, § 2892, he was entitled to no compensation for the storage. Owens v. Pyeatt, 248 Cal. App.2d 840, 57 Cal.Rptr. 100, 105 (1967).[1]

---

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

1. "It also appears plaintiffs retained possession of the automobile to protect their garagekeeper's lien. (Gen. see Civ.Code, § 3051). The court instructed the jury about their rights in this regard. A garageman who retains possession of an automobile repaired by him in the exercise of his right to claim a lien thereon is not entitled to the reasonable value of the storage thereof during the time he keeps it in his possession. (Civ.Code § 2892; see also Moss v. Odell, 141 Cal. 335, 337, 74 P. 999.)"

**518**

Pemberton seeks to distinguish Owens v. Pyeatt, supra on the ground that after the levy of attachment the storage was at the request of the sheriff who by the request created a storage lien in favor of Pemberton.

The lien, if any, arises under California Code of Civil Procedure, §§ 1208.61 and 1208.62.[2] It is to be noted that the lien created by § 1208.61 is not by the language of the section specifically restricted to services rendered at the request of the owner and that § 1208.62 implies that to the extent of $250.00 a storage lien may be created by someone other than the true owner.

The statutes do not spell out the persons other than the true owner who may by storage of the property subject it to a lien and the interstices in the section must be filled by the courts. It seems unlikely that the California courts would recognize a lien arising out of the repair or storage of an aircraft by a thief,[3] but in some cases one having possession other than the owner may encumber the property with a lien. It may be that repairs made on an aircraft at the request of a conditional vendee would result in a lien in the limited amount of $250.00. Such a result is reached in Davenport v. Grundy Motor Sales Co., 28 Cal.App. 409, 152 P. 932 (1915), and is justified by language to the effect that one who conditionally sells by consent vests in the buyer the right to have repairs made and attach a lien to the extent provided by law. Such reasoning will not support the authority of the sheriff to create a lien beyond that given to him by § 3057,[4] because the consent of the owner is completely lacking. The sheriff's powers are only those given him by the statutes relating to attachments. The sheriff is an agent of the attaching creditor and while the attached property is in the custody of the sheriff it is constructively in the possession of the attaching creditor.[5] If the attachment is properly levied and the debt is reduced to judgment, then the attached property is subject to the lien of the judgment which would include the storage charges. No difficulty arises in such a case because the sheriff's lien (§ 3057, supra) is coextensive with the storageman's lien. If, however, the attachment is defective or if the creditor fails to establish his claim, then the sheriff is required by statute to return the property to the true owner.[6] We do not believe that the

2. Subject to the limitations set forth in this chapter, every person has a lien dependent upon possession for the compensation to which he is legally entitled for making repairs or performing labor upon, and furnishing supplies or materials for, and for the storage, repair, or safekeeping of, any aircraft, also for reasonable charges for the use of any landing aid furnished such aircraft and reasonable landing fees. (§ 1208.61)

That portion of such lien in excess of two hundred fifty dollars ($250) for work or services rendered or performed at the request of any person other than the holder of the legal title is invalid, unless prior to commencing such work or service the person claiming the lien gives actual notice to the legal owner and the mortgagee, if any, of the aircraft, and the written consent of the legal owner and the mortgagee of the aircraft is obtained before such work or services are performed. For the purposes of this chapter the person named in the federal aircraft registration certificate issued by the Administrator of Civil Aeronautics shall be deemed to be the legal owner. (§ 1208.-62).

3. Cf. General Exchange Ins. Corp. v. Pellissier Square Garage, 24 Cal.App.2d Supp. 768, 69 P.2d 236 (1937).

4. An officer who levies an attachment or execution upon personal property acquires a special lien, dependent on possession, upon such property, which authorizes him to hold it until the process is discharged or satisfied, or a judicial sale of the property is had. § 3057 of the California Civil Code.

5. McCaffrey Canning Co. v. Bank of America, 109 Cal.App. 415, 294 P. 45 (1930).

6. California Code of Civil Procedure § 553. Reynolds v. Lerman, 138 Cal.App. 2d 586, 292 P.2d 559 (1956). See also California Code of Civil Procedure, § 542

statutes governing the duties of an attaching sheriff are modified by the lien laws to the extent that the sheriff may condition the return of the attached property to the successful owner-defendant on the discharge by the defendant of a storage lien. We read the case of Bentinck v. Menotti, 97 Cal.App. 412, 275 P. 850 (1929) as holding no more than that one who stores goods at the request of an attaching sheriff has a lien upon whatever interest in the property the sheriff may have. The result reached in that case was required to be reached by reason of the sheriff's lien created by the attachment statute.

■ We hold that there was no storage lien created by California law between the date of the attachment and the filing of the bankruptcy petition.

We now turn to the period following the filing of the petition in bankruptcy.

■ When the trustee was appointed, the title to the aircraft vested in him, retroactively to the date of filing the petition. The property then became subject to the exclusive jurisdiction of the bankruptcy court. Except as to some few transfers which are specifically permitted, transfers made after the date of the filing of the petition are invalid. (11 U.S.C.A. § 110(a). See Lockhart v. Garden City Bank and Trust Company, 116 F.2d 658 (2 Cir. 1940)). The bankrupt could not by express contract fasten liens upon the property after the petition was filed, nor could he thereafter by inaction, coupled with the force of the state law, create an implied contract and in that way fasten future and additional liens upon the property. For these reasons we hold that the state law is not controlling for the period subsequent to the filing of the petition.

■ State law not controlling, we seek federal law and its effect upon this case. The trustee is empowered to collect and reduce to money the proper-

ty of the estate (11 U.S.C.A. § 75(a)) and this power necessarily includes the power to store safely any personal property belonging to the bankrupt and to pay for the storage (11 U.S.C.A. § 102). In this case Pemberton did for the period between January 21st, when the attachment was released and the date of the sale, render a necessary and valuable service to the bankruptcy in storing the aircraft. Under similar circumstances the courts have had no difficulty in implying a duty on the part of the trustee to pay for the reasonable value of the services so rendered as an expense of administration. (Crook v. Zorn, 100 F.2d 792 (5 Cir. 1939); In re Chakos, 24 F. 2d 482 (7 Cir. 1928); In re Millard's, Inc., 41 F.2d 498 (7 Cir. 1930); In re United Cigar Stores Co. of America, 69 F.2d 513 (2 Cir. 1934); Rife v. Ruble, 107 F.2d 84 (6 Cir. 1939); City of Fort Lauderdale v. Freeman, 217 F.2d 600 (5 Cir. 1954)).

■ We limit recovery to the period between the release of the attachment and the sale for the following reasons: For the period from September 19, 1963 until January 21, 1965, Pemberton held the aircraft at the request of the sheriff. At the time of the filing of the petition the sheriff was lawfully in possession, and in the absence of some order from the bankruptcy court the trustee could not have successfully demanded possession from the sheriff. We are not here concerned with the problem of whether such an order would properly follow a summary proceeding (Cf. Soviero v. Franklin National Bank of Long Island, 328 F.2d 446 (2 Cir. 1964) or a plenary action (Cf. Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L. Ed. 770 (1924); Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944)), but only with the fact that the possession was rightfully in the sheriff until some kind of an order issued. That being true, until the release of the

(4) which contemplates that the sheriff will protect himself from liability for storage charges by requiring the attach-

ing creditor to make deposits sufficient to cover them.

attachment by the sheriff on January 21, the storage was not even impliedly at the behest of the trustee, and he has no responsibility for that period. From January 21 until April 19th, the right to possession was in the trustee. The period of time that the aircraft was stored for the trustee was reasonable and it is agreed that the charge of $3.50 per day was reasonable. It follows that Pemberton is entitled to be paid the sum of $304.50 as an expense of administration.

The judgment is reversed and the cause is remanded to the district court for further proceedings not inconsistent herewith.