Cancio Pérez, demandante y apelante, *v.* José Claudio, demandado y apelado, y South Porto Rico Sugar Co. of P. R., interventora y apelada.

No. 6916.—*Sometido:* Marzo 31, 1935. *Resuelto:* Mayo 29, 1935.

*Leopoldo Tormes García,* abogado del apelante; *F. Manuel Toro,* abogado de la interventora apelada.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

En 12 de marzo de 1930, José Claudio y South P. R. Sugar Co. celebraron un convenio titulado "Contrato Privado de Compraventa de Cañas." Conforme a lo estipulado, el colono se comprometió a tener sembradas y cultivadas para las zafras de 1931 a 1935, inclusives, cierto número de cuerdas de plantaciones de cañas de azúcar. Según reza el contrato, Claudio vendió además a la interventora South P. R. Sugar Co. todas las cañas que habían de producir dichas plantaciones en las zafras de 1931 a 1935. Los gastos de siembra, cultivo y cosecha habían de ser por cuenta de Claudio; los de elaboración por cuenta de la factoría. La interventora se comprometió a pagar a Claudio periódicamente, según se fuesen elaborando las cañas, cantidades que se determinarían de acuerdo con el grado de sucrosa que contuvieran las cañas y por el precio promedio del azúcar en el mercado de Nueva York. De estas sumas pagaderas a Clau-

dio podría la interventora retener en su poder, para hacerse cargo de cualquier suma y sus intereses que le estuviera adeudando el colono como cantidad vencida o por vencer en cada zafra, la parte que fuese necesaria.

El párrafo sexto del contrato dice así:

"Si 'EL COLONO' necesitare fondos para las atenciones propias de la siembra y cultivo de las referidas cañas, la Central podrá facilitarle, en concepto de anticipo, a cuenta del respectivo valor y precio de las cañas, y bajo las condiciones que se acordare, pero sin venir obligado a ello, los precisos; siendo el documento en que consigne el anticipo, parte integrante del presente contrato."

La cláusula $K$ del referido contrato dispone que en caso de serle imposible a la central moler las cañas del colono a su debido tiempo, éste puede molerlas donde mejor le pareciese, haciendo constar que las cañas así molidas "no se entenderán comprendidas en la presente venta, salvo que la Central hubiese hecho anticipos o préstamos al colono," en cuyo caso los importes líquidos de esas cañas quedarán a disposición de aquélla "hasta donde fuere necesario", para cubrir totalmente los anticipos o préstamos. Los otorgantes de este documento, que se denomina de compraventa de cañas, convinieron en que el contrato que el mismo contiene surtiese efectos legales de acuerdo con lo provisto en la ley de contratos de refacción agrícola y molienda de cañas, aprobada en marzo 10 de 1910. Este documento fué presentado al Registro de Contratos Agrícolas, donde se hizo constar, en mayo 12 de 1930, lo siguiente: "Anotado el contrato de refacción agrícola a que se refiere el documento que precede. . ."

La interventora adelantó dinero a Claudio para la refacción de las cañas durante el año de 1931, y al terminarse la zafra de dicho año y liquidarse la cuenta, resultó el colono adeudando a la factoría $1,252.55. Reconoció el colono esta deuda en un pagaré que fué garantizado con hipoteca sobre ciertos bienes muebles. Asimismo la interventora adelantó dinero para la cosecha de 1932, terminada la cual resultó

adeudando Claudio la suma total de $1,316.20, incluyendo dicha suma la deuda proveniente del año anterior.

· En 31 de enero de 1933 Cancio Pérez demandó a José Claudio en cobro de la suma de $2,068 con sus intereses. Obtuvo orden de aseguramiento de sentencia y embargó todo derecho, título, acción o interés que tuviese el demandado Claudio en las cañas próximas a ser cosechadas en las fincas comprendidas en el contrato de compraventa de cañas a que nos hemos referido. Se nombró al demandante depositario administrador de las cañas, y éstas fueron molidas en la factoría de la South P. R. Sugar Co. El azúcar producida fué vendida, arrojando un total de $1,324.89 después de hechas ciertas deducciones con las cuales están conformes las partes. Intervino entonces la South P. R. Sugar Co. en el litigio, contestando la demanda de Cancio Pérez y alegando tener preferencia sobre el producto de las cañas embargadas hasta que su crédito con el demandado, ascendente a $1,316.20, fuese satisfecho. Se dictó sentencia condenando a Claudio a pagar al demandante la suma reclamada y resolviendo que el crédito de la interventora por concepto de adelantos refaccionarios tenía preferencia, en cuanto al producto de las cañas embargadas, sobre el crédito del demandante.

· De esta sentencia, en cuanto concede preferencia al crédito de la interventora, apela el demandante, señalando tres errores que pueden reducirse a dos, a saber: que erró la corte al considerar que el contrato entre el colono y la interventora de marzo 12, 1930, fué uno de refacción agrícola y no de compraventa de cañas, y al resolver que dicho contrato perjudicaba al demandante, a pesar de no haberse hecho constar en el Registro que se adelantara suma alguna a Claudio para la refacción de las cañas.

· ■ La posición que adopta el apelante no parece favorecerle, porque, a su juicio, el convenio celebrado por las partes tiene el carácter de un contrato de compraventa de

cañas y no de molienda y refacción. El apelante sabe que la compraventa de las cañas implica necesariamente para Claudio la pérdida del dominio de las mismas en 1930, mucho antes de interponerse la presente acción, y, en el supuesto de que se tratase de un contrato de compraventa, es claro que el embargo trabado en 6 de febrero de 1933 no podría perjudicar los derechos adquiridos anteriormente por la compradora de las referidas cañas, South P. R. Sugar Co. No obstante creemos con la corte inferior que el contrato era, más bien que de compraventa, uno de molienda de cañas y refacción. Las cañas quedaban en posesión del colono, quien costeaba los gastos de producción de la cosecha y asumía todos los riesgos hasta que dichas cañas se convirtiesen en azúcar. No se obligó la factoría a pagar el valor de las cañas, sino a liquidar los azúcares producidos, de acuerdo con el precio en el mercado de Nueva York. Lógicamente se deduce que la intención de las partes no fué vender las cañas, sino contratar su molienda. Así se hace resaltar particularmente en la cláusula *K* del contrato, a que nos hemos referido, y que dispone en síntesis que aquellas cañas que no pudieran molerse en la Central se entenderían excluídas del contrato, a no ser que dicha Central hubiese hecho anticipos al colono, en cuyo caso el producto de las cañas habría de quedar a disposición de la factoría para atender al pago de los anticipos.

Aunque el contrato en su mayor parte se ocupa de la molienda de las cañas, comprende también adelantos para su refacción, los cuales han de ser pagados preferentemente del producto de las cañas. El párrafo sexto dispone que si el colono necesita fondos para atender a la siembra y cultivo de las cañas, la central podrá facilitarlos en concepto de anticipos, a cuenta del valor y precio de las cañas, y el colono faculta a la central para retener, del producto de la venta de los azúcares, la suma necesaria para cubrir lo anticipos hechos. En el párrafo décimo convienen las partes en que

el contrato ha de surtir efectos legales de acuerdo con la ley de contratos de refacción agrícola y molienda de cañas de marzo 10 de 1910. La forma en que las partes contratantes hacen constar sus estipulaciones no es la más recomendable para perfilar un contrato de molienda y refacción, pero creemos que sustancialmente se trata de un contrato de esta naturaleza, y así parece haberlo entendido el Registrador al verificar su inscripción.

■ Es verdad que los adelantos refaccionarios, aunque se llevaron a cabo de acuerdo con el convenio celebrado, no se hicieron constar en el registro, y es cierto también que no se fijó en dicho contrato la cantidad máxima que podía adelantarse para fines de refacción; pero debe tenerse en cuenta que se trata en este caso de un acreedor embargante, que no puede destruir en virtud de un embargo los derechos adquiridos por la interventora en la fecha en que fué trabado. Un acreedor que embarga no es un tercero dentro del significado de la ley y no adquiere más derechos sobre los bienes embargados que los que tenía el deudor en cuyo lugar se subroga. *Commercial Credit Co.* v. *Soto,* 41 D.P.R. 397; *Auxilio Mutuo* v. *Rossy,* 17 D.P.R. 83. Los derechos de un acreedor embargante con respecto a la propiedad embargada deben ser determinados por el estado del título al tiempo en que el embargo se practicó. El acreedor, que no contrajo su crédito a base de las cañas y sus frutos, no puede afectar con su embargo derechos anteriormente adquiridos por la South P. R. Sugar Co. sobre la referida propiedad. No hay discusión alguna con repecto a la cuestión de los anticipos. La prueba de la interventora sobre este extremo no ha sido contradicha. A mayor abundamiento la deuda de Claudio a la South P. R. Sugar Co. ha sido reconocida por un documento auténtico suscrito ante notario en 21 de septiembre de 1931, o sea un año y cuatro meses antes de haberse interpuesto la presente acción.

■ Arguye el apelante, no obstante, que aún tratándose de un contrato refaccionario, la interventora no tenía gra-

vamen alguno sobre las cañas embargadas en 1933, ya que no se probó que adelantara suma alguna para la cosecha de dicho año y sí solamente para la de 1931. En otras palabras, la parte apelante sostiene la teoría de que adelantos hechos en virtud de un contrato refaccionario tienen preferencia solamente sobre los frutos de la cosecha para que sirvieron. No estamos conformes con este criterio. Ya esta corte ha sentado la doctrina contraria en el caso de *Gómez* v. *American Colonial Bank*, 34 D.P.R. 148, donde se sostuvo que el crédito refaccionario del demandado American Colonial Bank constituía un gravamen preferente sobre los frutos, a pesar de que los adelantos refaccionarios fueron invertidos en cosechas anteriores a la envuelta en el litigio.

El apelante invoca el artículo 1826 del Código Civil, ed. 1930, que dispone que si concurren dos o más créditos respecto a determinados bienes muebles, los créditos por anticipo de semillas y cultivo serán preferentes sobre otros créditos en cuanto a los frutos de la cosecha para que sirvieron. Es indiscutible que la preferencia acordada por los artículos 1822 y 1826 del referido cuerpo legal se limita a los frutos que fueron objeto de los adelantos. Pero es que el gravamen refaccionario concedido por la ley de marzo 10 de 1910 no está sujeto a esa limitación. La referida ley fué adoptada precisamente para facilitar los préstamos a agricultores, y con ese fin tiende a ofrecer mayores garantías al prestamista. Si el Código Civil, en su artículo 1822, hubiese ofrecido las garantías necesarias, no habría sido preciso adoptar una ley especial sobre la materia. La preferencia establecida por dicho artículo es tan limitada que no puede razonablemente ofrecerse por sí sola para estimular inversiones de capital con fines agrícolas. Si continuara limitándose esta preferencia a los frutos objeto de los adelantos, el acreedor correría el riesgo de que debido a sequía, temporal o cualquier otra causa, el valor de los frutos de la

cosecha para que sirvieron los adelantos podría ser insuficiente para cubrirlos, careciendo en este caso el acreedor de la garantía de la próxima cosecha, aunque estuviese dispuesto a refaccionarla, ya que la nueva cosecha sólo respondería preferentemente, según el artículo 1822, de los adelantos hechos exclusivamente para su producción.

La ley (No. 37) de marzo 10 de 1910 (Leyes de 1910, pág. 122, Comp. 52–72) vino a ofrecer al capital precisamente aquellas garantías que no existían en la legislación hasta entonces vigente, y en su sección 4ª., según fué enmendada, dispone de una manera expresa que el crédito de refacción gozará de preferencia sobre los frutos objeto del gravamen durante los años comprendidos en el contrato y siempre hasta que el acreedor sea completamente satisfecho del importe de su crédito.

En vista de las disposiciones de la ley especial sobre la materia y de nuestra decisión en el caso de *Gómez* v. *American Colonial Bank,* supra, llegamos a la conclusión de que el gravamen refaccionario en este caso no está limitado a los adelantos hechos para la cosecha de 1933, sino que también garantiza los efectuados para la cosecha de 1931, particularmente teniendo en cuenta que el contrato es comprensivo de las cosechas de 1931 a 1935, inclusives.

*Debe confirmarse la sentencia apelada.*