EMPRESAS CAPOTE, INC., peticionaria, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. MIGUEL A. GIMÉNEZ MUÑOZ, JUEZ, demandado; CARL G. GAUMANN, interventor.

*Número:* O-75-14          *Resuelto:* 29 de abril de 1975

766

*Luis Muñoz Rivera* y *Enrique A. Vázquez*, abogados de la peti-
cionaria; *McConnell, Valdés, Kelly, Sifre, Griggs & Ruiz
Suria* y *Luis F. Gómez*, abogados del interventor; *Rodríguez
Maduro & Torres Vila*, abogados de Pedro A. Miranda.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

El presente recurso nos permite por primera vez definir
los efectos jurídicos del Art. 1489 del Código Civil[1] en
cuanto a la prelación de un crédito de un acreedor general
del contratista de la obra, en relación con los fondos que aún
adeuda el dueño de la obra, con respecto a su construcción.

El trasfondo de hechos pertinentes es el siguiente:

La Autoridad de Edificios Públicos, en lo sucesivo
*Autoridad*, encomendó al arquitecto Pedro Miranda, en ade-
lante *el arquitecto Miranda*, todo el diseño[2] del edificio cono-
cido como "Centro Judicial para el Area Metropolitana de San
Juan" mediante contrato suscrito el 25 de marzo de 1968;
obra que éste realizaría por precio cierto determinable, auxi-
liado por distintos consultores, seleccionados y contratados
directamente por el arquitecto Miranda con aprobación de la
Autoridad. El contrato disponía los pagos en distintas etapas y
que con posterioridad al primero, los restantes no se realizarían

---

[1] Reza del siguiente modo:

"Los que ponen su *trabajo* y materiales en una obra ajustada alzada-
mente por el contratista no tienen acción contra el dueño de ella sino hasta
la cantidad que éste adeude a aquél cuando se hace la reclamación." (31
L.P.R.A. sec. 4130.)

[2] De tipo arquitectónico, estructural, eléctrico y mécanico, incluyen-
do las especificaciones técnicas, perspectiva de colores y estimados, costos,
etc.

*a menos* que el Arquitecto Miranda sometiera evidencia certificada de los consultores acreditando conformidad por sus respectivos pagos, quedando el último pago *sujeto* a que mediara acuerdo final al respecto entre ellos. En ausencia de conformidad, los consultores podían notificar a la Autoridad que retuviera sus pagos, quedando ésta facultada a satisfacerlos directamente.

El 15 de julio de 1969, un acreedor general del arquitecto Miranda en el caso civil número 69-4047 sobre cobro de dinero, *Nicolás Quintana* v. *Pedro Miranda,* obtuvo un "Mandamiento de Embargo" en aseguramiento de sentencia por la suma total de $110,050.00, que en la alternativa señalaba: "En caso de que los bienes o parte de ellos constituyan derechos, título o fondos que tenga a su favor la parte demandada en terceras personas, requiérase para que de no estar los mismos disponibles al momento de diligenciarse el embargo, se retengan en poder de tal tercero, y en su día se envíen a la oficina del alguacil. . . ." La orden de embargo fue diligenciada mediante entrega al Director Ejecutivo de la Autoridad, dueña de la obra en que participaba el arquitecto Miranda.

El 22 de enero de 1971 Carl G. Gaumann, arquitecto consultor del arquitecto Miranda en dicha obra, radicó demanda contra éste por incumplimiento de contrato y compensación reclamando por trabajos allí realizados la suma total de $53,804.80. Obtuvo como remedio provisional en aseguramiento de sentencia una orden de abstención de pago y oportuno depósito dirigida a la Autoridad y debidamente diligenciada respecto a la suma reclamada de la "última factura" del arquitecto Miranda.

Así las cosas, el 16 de junio de 1971 la Autoridad radicó el caso número 71-3402, sobre *Adjudicación de Reclamaciones Opuestas y Sentencia Declaratoria,* promovido por razón de existir las reclamaciones conflictivas contra Miranda antes mencionadas y otras reclamaciones más de varios consultores del proyecto, a todos los cuales figuró como demandados.

La peticionaria Empresas Capote, Inc., en lo sucesivo, *Capote*, es la cesionaria de la sentencia por estipulación([3]) obtenida por Quintana como acreedor general en el caso 69-4047 antes referido de 15 de septiembre de 1972.

El tribunal de instancia ha adjudicado y satisfecho varios créditos de la mayoría de los demandados consultores quedando otras controversias pendientes, incluyendo dos reconvenciones interpuestas contra la Autoridad, una del arquitecto Miranda reclamando $211,848.16 y otra del interventor y arquitecto consultor Gaumann por $46,069.16. Este último y la peticionaria Capote se disputan la preferencia sobre el remanente de lo consignado que resulta ser el incidente que motiva la controversia ante nos.

La peticionaria Capote basa su preferencia en el embargo y la sentencia del caso 69-4047 y lo dispuesto en el Art. 1829 del Código Civil (31 L.P.R.A. sec. 5214), que consagra el orden de pago de créditos no preferidos y con remisión al Art. 1824 (31 L.P.R.A. sec. 5194), reconoce la superioridad de los créditos no privilegiados que consten "[p]or sentencia firme, si hubiesen sido objeto de litigio." Discute la inaplicabilidad del Art. 1489 del referido cuerpo al interventor y arquitecto consultor Gaumann, quien por el contrario plantea su aplicabilidad y argumenta adicionalmente ser un acreedor preferente en orden al contrato otorgado entre el arquitecto Miranda y la Autoridad; tésis que encontró apoyo ante el tribunal de instancia.

■ Aunque nuestra jurisprudencia hasta el presente se ha limitado a controversias originadas por reclamaciones de materialistas, los principios en ésta esbozados naturalmente rigen la acción incoada por un suplidor de *trabajo*. Por la

---

([3]) En la misma no intervino el arquitecto consultor Gaumann. El cedente Quintana se comprometió a no hacerla efectiva contra el patrimonio general del arquitecto Miranda hasta haber agotado las medidas judiciales y extrajudiciales para cobrarla contra los fondos consignados por la Autoridad en el caso ante nos.

relevancia al caso que nos ocupa ·es de rigor destacar, que hemos reconocido invariablemente—basado en consideraciones de orden público, moral y de equidad—que se trata de una acción directa contra el dueño de la obra hasta la cantidad que éste adeude al contratista a la fecha en que se hace la reclamación, cuyo efecto es sustraer el importe de lo reclamado de los otros acreedores particulares del contratista por otros conceptos. (⁴) *Armstrong, etc.* v. *Inter-Amer. Builders, Inc.*, 98 D.P.R. 734 (1970) ; *Amer. Surety Co.* v. *Tribunal Superior*, 97 D.P.R. 452 (1969) ; *C. Armstrong e Hijos* v. *Díaz*, 95 D.P.R. 819 (1968).

█ A tal enfoque doctrinario, con visión renovadora de los preceptos de nuestro Código Civil, y a tono con las exigencias y métodos de contratación moderna resolvemos ahora, que dentro del amplio molde de la figura de contrato de arrendamiento de obras y servicios están claramente comprendidas las llamadas profesiones y artes liberales, tales como los arquitectos; profesión cuyo ejercicio presupone el desempeño de trabajo susceptible, como en el caso de autos, de realizarse en obra ajustada alzadamente mediante contrato beneficiándole—de concurrir los demás requisitos—la acción directa contra el dueño de la obra reconocida en el Art. 1489 y según los pronunciamientos en nuestra doctrina jurisprudencial.

Esta conclusión se deriva no sólo de los términos literales del artículo antes citado, que al referirse "ponen su trabajo" lo hace sin cualificación de clase alguna, sino al tenor de sentido espiritual de equidad y justicia que lo informa. (⁵)

---

(⁴) Consúltese: 3 Espín Cánovas, Diego, *Derecho Civil Español*, págs. 465–466 (1954) ; Tomo IV, Vol. II Puig Peña, F., *Tratado de Derecho Civil Español*, págs. 304–305 (1951) ; II Diego y Gutiérrez, F., *Instituciones de Derecho Civil Español*, pág. 243 (1930) ; IV Castán T., *Derecho Civil Español, Común y Foral*, págs. 462–463 (1961) ; II Puig Brutau, *Fundamentos de Derecho Civil*, págs. 397–398 (1956) ; X Manresa, *Comentarios al Código Civil Español*, págs. 734–737 (1969).

(⁵) Los obreros de la industria de la construcción están protegidos por gravamen en virtud de ley especial Núm. 73 de 4 de mayo de 1931

Al incorporarse este precepto sustantivo al Código Civil Español en su Art. 1597, ". . . se prescindió de denominaciones profesionales, utilizando expresión general que da idea de ser instituida la acción en favor y garantía del trabajo en varias excepciones o formas remunerativas, si bien persigue el lucro estricto del salario u otro más amplio, compensador de aptitudes, riesgos o esfuerzos. . . ." Sentencia del Tribunal Supremo de España de 29 de junio de 1936.

■ El comentarista Scaevola, con atinada clarividencia observa:

"El arrendamiento de obra es un contrato por el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellas.

El contrato de obra lo es de fuerza inteligente adecuada a una finalidad constructiva o transformadora. Su objeto actual es una potencialidad latente (trabajo) y una representación ideal de la cosa que aquella potencialidad, habilmente dirigida, ha de producir.

Esencialmente el contrato de obra es contrato de trabajo; no fuerza muscular o mental aisladamente considerada como factores del todo patrimonial, sino ligada con la producción de una cosa concreta, que mediante un precio estimativamente determinado ha de pasar, una vez construida, al dominio ajeno.

La prestación puede ser de trabajo o industria. . . . Trabajo es esfuerzo u ocupación en alguna obra o ministerio. Industria es oficio, profesión mecánica que uno ejerce.

Estas distintas dicciones calificadas por una mayor especialización de la destreza, carecen de todo valor legal y deben borrarse del texto.

El peón que amasa el yeso y el ingeniero que proyecta un ferrocarril realizan trabajo, porque uno en las faldas y otro en las cumbres de la inteligencia, ponen a contribución su patrimonio personal, hacen, ejecutan, cooperan a la ejecución de una obra determinada.

---

(29 L.P.R.A. sec. 186). Véase: *Ferrer* v. *Alliance Company of P.R. Inc.*, 93 D.P.R. 1, 9 (1966). En vista de ello, si excluyéramos a los profesionales, estaríamos restándole eficacia a este precepto.

Todas estas justificaciones teóricas tienen innegable funda-
mento, ya se atienda al trabajo manual remunerado con salario,
ya a la provisión de materiales por contratos de compra efec-
tuados entre los proveedores y el contratista. La razón funda-
mental es de equidad, y consiste en no ser lícito que dueño o em-
presario, o ambos, hasta por fraudulenta confabulación, se en-
riquezcan dañadamente con el esfuerzo o la aportación impagada
de operarios y materialistas (voz corriente en la técnica vulgar
y adulterada de los oficios constructivos)." XXIV, Scaevola,
*Código Civil*, págs. 75-76 (1950).

Manresa, en la obra citada resume la cuestión del siguiente
modo:

"En todos los casos [de trabajadores intelectuales, domésti-
cos y operarios] se descubre el mismo fenómeno: el individuo
que es dueño de sus fuerzas físicas o intelectuales las ejercita en
provecho cierto de sus semejantes a cambio de la pactada com-
pensación económica: el trabajo es el objeto del contrato." Pág.
676.

■ El concepto *contratista*, va más allá del significado
vinculante a la ingeniería, sino que se extiende a la acepción
más amplia cubridora de la persona que se obliga frente a
otra a realizar o producir determinados resultados o activida-
des a cambio de precio cierto; entendiéndose por precio cierto,
precio determinable, ya sea mediante una remuneración única
e invariable por toda la obra o por precio fijado por piezas o
medidas.

Lo expuesto nos lleva a la conclusión de que es incorrecta la
argumentación de Capote en el sentido de que el arquitecto
Miranda no es un contratista ni pactó la realización de una
obra ajustada con la Autoridad. Al contrario, éste al igual que
el arquitecto consultor Gaumann, en sus respectivas encomien-
das diseñaron y produjeron unos planos que a los fines del
contrato en cuestión, resultan ser obras realizadas con talento
y actividad, que no es otra cosa que trabajo aportado en la
construcción del Centro Judicial.

Ahora bien, la peticionaria Capote (cesionaria del acree-

dor general) nos pide que resolvamos la inaplicabilidad del Art. 1489 y por ende la preferencia de su crédito, señalando que al momento en que el arquitecto consultor Gaumann reclamó de la Autoridad, (6) ya su cedente Quintana (acreedor general) había obtenido el embargo y la sentencia. Reflexionada cuidadosamente la lógica de tal proposición nos encontramos con las siguientes dificultades:

La orden de retención de fondos y la Sentencia obtenida por el acreedor general Quintana en el caso número 69-4047 recayeron en unos fondos sobre los cuales el arquitecto Miranda no tenía derecho exclusivo, no eran líquidos y estaban sujetos a la contingencia de liquidación conforme los términos del referido contrato en que los consultores tenían un derecho reconocido a ser compensados por sus servicios antes de que se le pagara finalmente al arquitecto Miranda.

■ Aun cuando hemos reconocido que la validez de una orden de retención al amparo de la Regla 56 de Procedimiento Civil vigente no requiere la existencia de una deuda líquida y sin contingencias, su expedición y alcance está limitado a "... los derechos que una parte pueda tener sobre el mismo...", *F. D. Rich Co.* v. *Tribunal Superior*, 99 D.P.R. 158, 176 (1970). (7) Ello implica que su diligenciamiento no puede acelerar el vencimiento de créditos eventuales del demandado, y mucho menos conferir o crear derecho de propiedad sobre fondos cuya pertenencia exclusiva todavía no ha sido determinada. Debe recordarse que aun entre acreedores comunes, fundado en el axioma *prior tempore portior jure*, "... el primero que embarga tiene preferencia sobre los demás, pero esa preferencia no va más allá del derecho que tenga el deudor

---

(6) Por vía de reconvención formulada el 15 de febrero de 1974, esto es, con anterioridad a la Resolución del tribunal de instancia que nos ocupa.

(7) Dicho caso es distinguible al de autos, pues allí no se demostró la existencia de reclamaciones pendientes de otros suplidores (pág. 174), y el allí acreedor por sentencia Arzuaga litigaba precisamente una acción como suplidor de materiales de una obra.

sobre los bienes embargados." *P.R. Bedding Mfg. Corp.* v. *Herger*, 91 D.P.R. 519, 523 (1964) ; *Pérez* v. *Claudio y South P.R. Sugar Co., Inter.*, 48 D.P.R. 575, 580 (1935) ; *Commercial Credit Co.* v. *Soto*, 41 D.P.R. 397, 398 (1930).

■ Respecto a la sentencia como razón de preferencia, la misma fue obtenida por estipulación en la cual el interventor y arquitecto consultor Gaumann no participó para una fecha en que ya había demandado al arquitecto Miranda, y la Autoridad había radicado la acción de reclamaciones conflictivas. No podía ceder al acreedor general Quintana su crédito contra la Autoridad en perjuicio de los suplidores de trabajo quienes tenían una preferencia en virtud del contrato. Tanto en aquel momento, como al presente, la posesión y derecho del arquitecto Miranda en los fondos en poder de la Autoridad estaba condicionada a la previa liquidación y pago de las sumas adeudadas reclamadas por los otros consultores con motivo del proyecto, entre los que estaba el arquitecto consultor Gaumann, siendo ello una acreencia preferente de las cuales el arquitecto Miranda no podía desnaturalizar mediante pacto con un acreedor ordinario. Tampoco puede hacerlo la peticionaria Capote como cesionaria del crédito del acreedor general Quintana.

Atribuirle preferencia a las gestiones judiciales iniciales de su cedente sería desatender el carácter de orden público que revisten las reclamaciones de suplidores de trabajo y material bajo el Art. 1489. Equivaldría a decidir que una vez otorgado un contrato, cualquier acreedor general previo del contratista, ajeno a sus disposiciones, con la mera radicación de una demanda en cobro de dinero y la obtención de una orden de retención en aseguramiento de sentencia sobre los derechos del dueño de la obra, o con la ejecución inmediata de una sentencia obtenida con anterioridad, tiene la facultad de derrotar y anular las disposiciones del artículo que nos ocupa, ello aun antes de que naciera la posible causa de acción de un

suplidor. No nos es posible sostener tal anomalía y desarticulación jurídica.

*Por los fundamentos expuestos se dictará sentencia confirmando la Resolución del Tribunal Superior, Sala de San Juan y se anulará el auto expedido.*

