# 2000 DTA 108

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL II DE BAYAMON**

MANUEL VAZQUEZ MARTINEZ
Demandante-Apelante

v.

ORANGE CRUSH DE PUERTO RICO, INC.
Demandado-Apelado

Núm. KLAN-98-00845

San Juan, Puerto Rico, a 29 de febrero de 2000

Panel integrado por su presidenta, la Juez Pesante Martínez,
y los Jueces Martínez Torres y Salas Soler

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Acude ante nos el apelante, Manuel Vázquez Martínez, mediante recurso de apelación, en el que solicita que revoquemos la sentencia dictada el 1 de junio de 1998 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (Hon. Juan Maldonado Torres, Juez). Mediante dicha sentencia se declaró sin lugar una querella al amparo de la Ley de Reclamacíones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118. El Sr. Vázquez Martínez reclamaba en dicha querella la suma de cien mil dólares ($100,000) por alegado incumplimiento de contrato por parte de Orange Crush de Puerto Rico (OCPR), compañía para la cual trabajaba como contralor. Luego de un análisis sereno y detenido de la prueba ofrecida por las partes, así como del derecho aplicable, resolvemos que procede confirmar la sentencia apelada.

### I

El Sr. Manuel Vázquez Martínez comenzó a trabajar para Orange Crush de Puerto Rico, el 5 de febrero de 1990, como asistente de contralor bajo un contrato de empleo por término indefinido. El 15 de enero de 1996, se suscribió un nuevo contrato de empleo entre el señor Vázquez Martínez y el presidente de OCPR en aquel momento, el señor Jorge Valdés Llauger. Mediante dicho contrato denominado *"Professional Agreement"*, el señor Vázquez Martínez se obligaba a ejercer eficientemente las responsabilidades como contralor de OCPR que había estado desempeñando con anterioridad al acuerdo. Quedó establecido el sueldo que devengaría el señor Vázquez Martínez durante cada año de servicio. Dicho contrato sería por un tiempo determinado de cinco (5) años, es decir, hasta el 31 de enero de 2001. Además, se estipuló una cláusula de terminación del acuerdo que por su importancia transcribimos a continuación:

*"ARTICLE 5 CAUSE FOR TERMINATION*

*Section 5.01 Cause for Termination.*

*Any unlawful, negligent act or non compliance with the terms of this Agreement by Comptroller will be cause for termination and the Comptroller will lose all rights under Agreements.*

*Notwithstanding the above, the Corporation may terminate at any time this contract by paying $100,000 to Comptroller."*

El contrato objeto de controversia, fue suscrito en un momento crítico para OCPR. En la década de 1990, esta corporación tuvo una crisis financiera que le provocó cuantiosas pérdidas económicas. De hecho, no podía

pagar sus cuentas con la diligencia necesaria, por lo que las relaciones con sus suplidores se vieron adversamente afectadas.

En 1996 hubo un proceso de reorganización en OCPR. Durante ese año, un grupo de inversionistas contrató al señor Fabio García Matienzo para que evaluara la deseabilidad de invertir en OCPR. Así las cosas, Eagle Investment Fund Inc. decidió invertir en la corporación la cantidad de $8.802 millones para pagar las deudas de dicha empresa, a cambio de obtener el 75% de las acciones de OCPR. Por virtud de esta inversión, el Sr. García Matienzo se convirtió en el Presidente de la Junta de Directores de OCPR.

Ahora bien, uno de los suplidores más importantes de OCPR era ALPLA Caribe, Inc. (ALPLA). ALPLA es un manufacturero de botellas plásticas, que debido al pésimo historial de pago de OCPR, no le estaba vendiendo directamente dichas botellas, las cuales eran extremadamente valiosas para OCPR. En vista de la necesidad de restablecer la relación con ALPLA, ambas partes celebraron una reunión en mayo de 1997. En dicha reunión, el señor García Matienzo, le solicitó a los representantes de ALPLA que restablecieran la relación comercial con OCPR y que le diera crédito nuevamente. La nueva política de OCPR sería saldar a tiempo las cuentas con sus suplidores, acogiéndose a todos los descuentos ofrecidos por el pago. En vista de estas nuevas circunstancias, ALPLA acordó venderle nuevamente sus productos directamente a OCPR y le aprobó un crédito de treinta (30) días.

Dado el resultado positivo de ese acuerdo y de la gran importancia de restablecer relaciones con ALPLA, el señor García Matienzo instruyó verbalmente al demandante-apelante Vázquez Martínez a que pagase las facturas de ALPLA dentro del término acordado. Alegadamente, estas instrucciones fueron dadas reiteradamente en multiplicidad de ocasiones sin que el señor Vázquez Martínez manifestara dudas al respecto. El señor García Matienzo no consideró que fuera necesario indicarlas por escrito, ya que percibió que sus instrucciones habían sido comprendidas. Sin embargo, el demandante-apelante, Sr. Vázquez Martínez, no hizo pago alguno a ALPLA acogiéndose al descuento ofrecido.

En julio de 1997, el señor Hugo Benítez acudió a OCPR en representación de ALPLA y se reunió con los señores García Matienzo y Vázquez Martínez para quejarse del atraso en el pago de algunas facturas. En vista de esto, García Matienzo le impartió nuevamente las instrucciones a Vázquez Martínez en cuanto a la forma en que debían hacerse los pagos a ALPLA. No obstante ello, las directrices no fueron seguidas tal cual dadas. El señor Vázquez Martínez indicó que las cuentas no fueron pagadas a tiempo por falta de fondos, mas según la prueba creída por el Tribunal de Primera Instancia, no logró ofrecer prueba creíble que corroborara este dato.

El 5 de septiembre de 1997, el Sr. Hugo Benítez se comunicó con el Sr. García Matienzo para informarle que se le iba a cancelar el crédito a OCPR por el atraso en el pago de las facturas en cuestión. Este se sorprendió y enojó, ya que entendía que sus intrucciones habían sido claras respecto a este particular y aparentemente se le había desobedecido. Trató de comunicarse con Vázquez Martínez, y al no conseguirlo, ordenó que se saldara inmediatamente la cuenta de ALPLA. Afortunadamente, el crédito fue restituido.

En vista de lo acontecido, el señor García Matienzo escribió un memorando dirigido a Vázquez Martínez, en el que solicitó una explicación sobre lo sucedido. Al no recibir una aclaración satisfactoria, el señor García Matienzo, con el aval de la Junta de Directores de OCPR, decidió despedir de su empleo al señor Vázquez Martínez. Le entregó a Vázquez Martínez la carta de despido el día 8 de septiembre de 1997. Por considerar que era acreedor de la cantidad de cien mil dólares ($100,000) que figura en el contrato de empleo, Manuel Vázquez Martínez presentó una querella que fue declarada SIN LUGAR por el Tribunal de Primera Instancia.

El apelante señala, en síntesis, que incidió el Tribunal de Primera Instancia al permitir que se presentara prueba que no fue considerada por el patrono al momento de ordenar el despido. Además, el apelante-querellante señala que el foro de instancia erró en la apreciación de la prueba y por ende al dictar sentencia declarando sin lugar la querella presentada. OCPR señala que esos errores no se cometieron. El recurso quedó

sometido con la aprobación de la exposición narrativa de la prueba por el Tribunal de Primera Instancia.

En busca de un resultado lógico, racional y justiciero, hemos examinado detenida y cuidadosamente la exposición narrativa de la prueba testifical que desfiló en el juicio. Ha sido objeto de estudio sereno tanto las alegaciones de ambas partes en el pleito como la prueba documental ofrecida. Dicho análisis nos lleva a concluir que no incidió el Tribunal de Primera Instancia al declarar sin lugar la querella objeto de este recurso.

## II

En Puerto Rico rige el principio de libertad de contratación que consagra el Artículo 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372. Este dispone que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, la moral, ni al orden público. Esta libertad no es ilimitada. La única limitación que se impone al poder de la voluntad del hombre es la ley, la moral y el orden público, por lo cual rige el principio del consensualismo en materia de contratación. José Ramón Vélez Torres, *Curso de Derecho Civil*, San Juan, Facultad de Derecho Universidad Interamericana, 1990, T. IV, Vol. II, pág. 6. Esta máxima ha sido reiterada recientemente por el Tribunal Supremo de Puerto Rico. Véase, *González v. Autoridad de Carreteras,* Opinión de 30 de abril de 1999, **99 J.T.S. 72**, pág. 994.

Como parte de esa libertad de contratación, es muy frecuente que nazcan contratos en los que el objeto es una obra o servicio. Este tipo de contratos está regulado por el Artículo 1434 del Código Civil, 31 L.P.R.A. sec. 4013, el cual ordena: *"En el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar un servicio por precio cierto."* Estos contratos han sido discutidos por la doctrina científica. Así, por ejemplo, Diez-Picaso y Antonio Gullón lo describen de esta manera: En el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra o a prestar un servicio por precio cierto. De la definición resulta que el contrato es consensual, pues se perfecciona por el mero consentimiento y no se requiere para su perfección ninguna forma determinada. Luis Diez-Picaso y Antonio Gullón, *Sistema de Derecho Civil*, Madrid, Ed. Tecnos, 1994, 6ta ed., Vol.II, pág. 449. Nuestra jurisprudencia también ha discutido dicha definición en *Empresas Capote v. Tribunal Superior,* 103 D.P.R. 765, 771 (1975).

Sin lugar a dudas, nos encontramos ante una reclamación de naturaleza contractual. Estamos ante un contrato de servicio o de trabajo que puede ser pactado por tiempo indeterminado o por un período fijo de duración. *Mattei Nazario v. Vélez,* Opinión de 7 de mayo de 1998, **98 J.T.S. 55**, pág. 921. En este caso, las partes pactaron por un término fijo, ya que se incluyó la fecha de duración que sería por cinco (5) años. Sin embargo, los contratos de servicio están regulados por las leyes que protegen a los trabajadores, principalmente en lo concerniente a algunos derechos irrenunciables como salario mínimo, horas extras, vacaciones y el derecho a no ser despedido injustificadamente. En particular, es política pública del Estado el desalentar los despidos injustificados. *Mattei Nazario v. Vélez, ibid.*

Uno de los estatutos que deben ser consultados es la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185 *et seq.* El Artículo 185a ordena: *"[E]l mero hecho de que un empleado preste servicios al amparo de un contrato por tiempo determinado, por sí sólo no tendrá el efecto automático de privarle de la protección de las secs. 185a a 185m de este título.."* Por tanto, esta ley constituye un marco de referencia para evaluar la razonabilidad de las causales de justa causa para el despido que las partes privadas incorporen en contratos de servicio por tiempo determinado. *Mattei Nazario v. Vélez, supra,* pág. 922.

Si tomamos como base la Ley 80, *supra,* debemos resaltar algunas de las causas que pueden dar base a un despido justificado:

*"Que el obrero siga un patrón de conducta impropia o desordenada.*

*La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento."*

En este caso, el señor Vázquez Martínez no siguió las instrucciones que se le dieron por lo que su actuación fue una negligente y de insubordinación. Esto nos lleva a concluir que, en efecto, no rindió su trabajo de forma eficiente. Más aún, surge de la propia letra del contrato suscrito entre las partes que cualquier acto negligente por parte del empleado sería una causa para darlo por terminado, perdiéndose todos los derechos del acuerdo en controversia. Por lo tanto, OCPR no dejó de cumplir con lo convenido al despedir al Sr. Vázquez Martínez por una actuación que reveló descuido, negligencia y falta de cumplimiento con las instrucciones impartidas.

El señor Vázquez Martínez fue expulsado únicamente por el problema relatado con la cuenta de ALPLA, y no se mencionó en la carta de despido ninguna otra causa para su destitución. Es posible despedir a un empleado por un sólo acto de su parte si dicha actuación es devastadora para el funcionamiento y sosiego de la empresa. De hecho, la Ley Núm. 80, *supra*, no favorece el despido como sanción a la primera falta, pero no excluye el despido como sanción a aquella primera falta cuya intensidad de agravio así lo requiera en protección de la buena marcha de la empresa. *Delgado Zayas v. Hospital Interamericano,* Opinión de 5 de diciembre de 1994, **94 J.T.S. 149**, pág. 500, *Srio. del Trabajo v. I.T.T.,* 108 D.P.R. 536, 542-543 (1979).

La desobediencia a las instrucciones claras y específicas que se le cursaron en más de una ocasión, es razón suficiente para su despido. Esto representa una actitud de insubordinación y descuido por el buen nombre y funcionamiento de la corporación para la cual trabajaba el Sr. Vázquez Martínez. Era de conocimiento del contralor de la empresa la difícil situación por la que atravesaba OCPR. Así también, éste sabía sobre la importancia que representaba el fiel cumplimiento del acuerdo logrado con ALPLA. Esta falta pudo haber puesto en peligro la buena marcha de la empresa y hasta su supervivericia, por el estado económico que se encontraba. Después de todo, sin las botellas plásticas que suple ALPLA, no hay cómo embotellar el refresco que produce OCPR. Reiteramos que *"la ley considera una sola ofensa o primera falta como tal justa causa si por su gravedad y su potencial de daño pone en riesgo el orden, la seguridad o la eficiencia que constituyen la normalidad operatoria del establecimiento."* (Enfasis nuestro). *Secretario del Trabajo v. I.I.T., supra.* De no haber sido por la rápida actuación del Sr. García Matienzo, ALPLA hubiera suspendido el crédito recién concedido a OCPR. Ciertamente, el potencial de daño era nefasto y del conocimiento del Sr. Vázquez Martínez. Este sugiere que las instrucciones que recibió eran equivocadas. No vamos a discutir eso, pues no nos corresponde administrar a OCPR desde este estrado.

Por lo anteriormente expuesto, el señor Vázquez Martínez fue despedido justificadamente por una sola falta que pudo haber tenido consecuencias graves para OCPR. No hubo, por tanto, incumplimiento, del contrato suscrito entre las partes, por lo que no correspondía el pago de la cláusula penal establecida.

### III

Aduce el apelante-querellante, Sr. Vázquez Martínez, que el Tribunal de Primera Instancia erró al considerar como causa justificada para el despido, prueba que no tenía el patrono al momento de ordenar la destitución. Se refiere a que se utilizó como justificación para su expulsión, una alegada falla que hubo en los libros de contabilidad de OCPR. Uno de los suplidores principales de OCPR era Reynolds Metals Company. En 1994 hubo un acuerdo entre Reynolds y OCPR para que esta última adquiriera una maquinaria para embotellar jugos. El costo de la maquinaria era de $520,000.00. Se pagó sólo parte de dicha cantidad y al momento de pagarse la totalidad de la deuda, la maquinaria pertenecería entonces a OCPR. Esta clase de acuerdo es un tipo de arrendamiento financiero, en cuyo caso la maquinaria se contabiliza como un activo y la deuda como un pasivo. Sin embargo, el señor Vázquez Martínez no registró estas transacciones en los libros de contabilidad de la empresa. Es decir, no se incluyó la maquinaria como activo, ni la deuda como pasivo. Este error cometido por el contralor de la compañía, el señor Vázquez Martínez, fue presentado por OCPR como razón para su despido y dicha prueba fue reconocida y aceptada por el Tribunal de Primera Instancia.

No obstante, según el caso de *Srio. del Trabajo v. J.C. Penney Co.,* 119 D.P.R. 660 (1987), los tribunales no deberán permitir que un patrono trate de justificar posteriormente el despido con nuevas razones que no consideró en el juicio mental al decidir expulsarlo de su empleo. No debemos olvidar que las razones para el

despido deben existir con anterioridad a que ocurra el mismo. Sin embargo, independientemente de la prueba que consideró o creyó el Tribunal de Primera Instancia, el resultado al que llegamos es el mismo. El señor Vázquez Martínez fue correctamente despedido debido a su proceder irrazonable en cuanto a la cuenta de ALPLA, luego de haber recibido instrucciones directas y precisas.

Por lo tanto, resulta innecesario argumentar sobre si debió haber sido considerada dicha prueba por el Tribunal de Primera Instancia. Luego de evaluada la prueba ante nos, estimamos que el señor Vázquez Martínez fue correctamente despedido por el mero hecho alegado en la carta de despido. No ha pesado en nuestro ánimo todos los demás asuntos alegados y que fueron considerados por el Tribunal de Primera Instancia para tomar una determinación.

Si bien es cierto que a nuestro juicio el foro de instancia incidió en darle crédito a las otras razones presentadas por OCPR para justificar el despido del Sr. Vázquez Martínez, esto no es óbice para confirmar la sentencia recurrida. Conocida es la norma de que la revisión apelativa se da contra la sentencia y no contra sus fundamentos. *Alvarez Figueredo v. González Lamela,* Opinión de 28 de octubre de 1993, **93 J.T.S. 132**. Por ende, si la resolución es correcta, procede su confirmación aunque su razonamiento sea erróneo. *Sánchez v. Eastern Airlines,* 114 D.P.R. 691, 695 (1983). A pesar de que el razonamiento fue en parte incorrecto por considerarse prueba sobre unas razones no presentadas al momento del despido, este mero hecho no es razón para revocar la sentencia recurrida. El foro de instancia actuó correctamente en cuanto a la apreciación de la prueba concerniente a la situación de ALPLA.

No podemos perder de perspectiva que este Tribunal no intervendrá con la determinación de credibilidad que a dicho foro le merezcan los testigos y las declaraciones de las partes, a menos que la parte apelante demuestre que el tribunal incurrió en pasión, prejuicio o error manifiesto en la apreciación de la prueba. *Orta v. Padilla Ayala,* Opinión de 8 de febrero de 1995, **95 J.T.S. 21**, pág. 668. El examen de la prueba presentada, utilizando este estándar de revisión, nos lleva a darle deferencia a las determinaciones del Tribunal de Primera Instancia, aun cuando no todos los fundamentos fueron correctos.

Por no haber incumplimiento de contrato, no procede el pago de los cien mil dólares ($100,000) que reclama el apelante-querellante, señor Manuel Vázquez Martínez.

## IV

Por todo cuanto antecede, confirmamos la sentencia objeto de este recurso.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General